UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE RIVERA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Case No. 3:21-cv-30037-KAR |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
|     Defendant. | ) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR AN ORDER
AFFIRMING THE COMMISSIONER'S DECISION
(Docket Nos. 17 & 19)

ROBERTSON, U.S.M.J.

I.  INTRODUCTION AND PROCEDURAL HISTORY

Janice Rivera ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for DIB and SSI on December 20, 2018, alleging a November 14, 2018, onset of disability due to glaucoma in both eyes, spinal arthritis, scoliosis, and Diabetes Type 2 (Administrative Record "A.R." at 616-627, 652, 675).[2] Her application was denied initially (A.R. 424-429) and on reconsideration (A.R. 436-447). She requested a hearing before an

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the court directs that Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), be substituted for Andrew Saul.
[2] All citations to "A.R." refer to the administrative record, which appears on the docket of this case as document 11. The page numbers were assigned by the SSA and appear in the lower right-hand corner of each page.

Administrative Law Judge ("ALJ"), and one was held on July 28, 2020 (A.R. 279, 281, 449-453).  On August 5, 2020, the ALJ issued an unfavorable decision (A.R. 199-228).  The Appeals Council denied review on February 3, 2021 (A.R. at 1-7) and, thus, Plaintiff is entitled to judicial review.

Plaintiff seeks remand based on her contention that the ALJ erred by concluding that her mental impairments were not severe at step two of the sequential evaluation process, and, in addition, by mistakenly relying on the absence of mental health treatment after March 2020.  Before the court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 17), and the Commissioner's motion for an order affirming her decision (Dkt. No. 19).  The parties have consented to this court's jurisdiction (Dkt. No. 16).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons set forth below, the court DENIES Plaintiff's motion and ALLOWS the Commissioner's motion.

II. STANDARD OF REVIEW

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing.  *See* 42 U.S.C. § 405(g).  Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'"  *Coskery v. Berryhill,* 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)).  The court reviews questions of law *de novo*, *id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion."  *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human*

*Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)).  "Substantial-evidence review is more deferential than it might sound to the lay ear:  though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not."  *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted)).  In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence.  *See Applebee*, 744 F. App'x at 6.  That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

   III. DISABILITY DETERMINATION

      A.  The Legal Standard for Entitlement to DIB and SSI

   In order to qualify for DIB and SSI, a claimant must demonstrate that she is disabled within the meaning of the Social Security Act.[3]  A claimant is disabled for purposes of DIB and SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An "individual shall be determined to be under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

---

[3] There is no challenge to Plaintiff's insured status for purposes of entitlement to DIB, *see* 42 U.S.C. § 423(a)(1)(A), or to her financial need for purposes of entitlement to SSI, *see* 42 U.S.C. § 1381a.

national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated by the Social Security Administration ("SSA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The hearing officer must determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers from a severe impairment; (3) the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) the impairment prevents the claimant from performing previous relevant work; and (5) the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Before proceeding to steps four and five, the Commissioner must assess the claimant's RFC, which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.*

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate RFC.  *See Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding her restrictions and limitations.  *See Goodermote*, 690 F.2d at 7.

    B.  <u>The Step Two Determination</u>

At Step 2, the plaintiff has the burden to prove that she has a medically determinable severe impairment or combination of medically determinable impairments.  *Ramos v. Barnhart*, 60 F. App'x 334, 335 (1st Cir. 2003) (per curiam).  An impairment is severe only if it "significantly limit[s]" a claimant's physical or mental ability to do basic work.  20 C.F.R. §§ 404.1520(c); 416.920(c).  *See also Barrientos v. Sec'y of Health & Hum. Servs.*, 820 F.2d 1, 1 (1st Cir. 1987) (per curiam).  Step Two effectively screens out applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment."  *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).

    C.  <u>Opinion Evidence</u>

In order to assess opinion evidence, the ALJ must consider the persuasiveness of medical opinions in the case record.  20 C.F.R. §§ 404.1520c; 416.920c.  The most important factors to be considered in assessing persuasiveness are "supportability" and "consistency."  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  As regards supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).  In reference to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).  Other factors that are weighed include the medical source's relationship with the claimant and specialization.  20 C.F.R. §§ 404.1520c(c)(3)-(4); 416.920c(c)(3)-(4).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not … persuasive regardless of who made the medical opinion."  82 Fed. Reg. at 5854.

    D.  <u>Evaluation of Claims of Mental Impairment</u>

Evaluation of a claim of mental impairment depends on the use of a psychiatric review technique that assesses the degree of functional limitation in four broad functional areas, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  In rating the degree of limitation, the ALJ uses a five-point scale consisting of: none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4).  If the claimant's degrees of limitation are rated as "none" or "mild," the ALJ generally will find that the impairment is not severe.  20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).  The ALJ must include a specific finding as to the degree of limitation in each of the four functional areas in her decision.  20 C.F.R. §§ 404.1520a(e)(4); 416.920a(e)(4).

IV.     RELEVANT FACTUAL BACKGROUND

A. Plaintiff's Background

Plaintiff was forty-six years old at the time of the hearing (A.R. at 220). She has a high school education, along with one year of training in billing and coding (A.R. 220, 310). Her primary work experience has been as a medical receptionist, a personal care attendant, and a data entry office clerk (A.R. 310).

B. Medical Records Relevant to Plaintiff's Claim[4]

Between June and August 2019, Plaintiff was seen for counseling at Directions for Living (A.R. 938-958). When Plaintiff presented to Maranda Carter, M.A., for an initial evaluation on June 6, 2019, she was euthymic, although she did become dysphoric and teary at points during the session (A.R. 957-958). She complained of symptoms of depression related to chronic back issues and indicated that she experienced passive suicidal thinking almost daily (A.R. 957-958). She also related that she had experienced trauma in her childhood in the form of physical abuse by her father (A.R. 957). Ms. Carter described Plaintiff's appearance as appropriately dressed and groomed; her attitude as pleasant and cooperative; her speech as spontaneous, non-pressured, and coherent; her thought process as logical and organized; her thought content as devoid of hallucinations, delusions, or paranoia, and her cognitive functioning as grossly intact (A.R. 957-958).

Plaintiff returned on June 13, 2019, for a biopsychosocial assessment (A.R. 951-956). Plaintiff reported that her depressive symptoms included depressed mood, loss of interest, decreased motivation, irritability, poor concentration, sleep disturbance, appetite disturbance,

---

[4] Plaintiff challenges only the ALJ's evaluation of her mental impairments. Therefore, only her treatment that is relevant to her alleged mental impairments is summarized here.

7

suicidal thoughts, and feelings of hopelessness, while her anxiety/PTSD symptoms consisted of feeling worried, irritable, and tense, inability to deal with transitions, increased symptoms with times of stress, flashbacks of previous trauma, and obsessive thoughts (A.R. 951). Plaintiff also reported that she had been experiencing passive suicidal ideation for many years (A.R. 956). Ms. Carter diagnosed Plaintiff with PTSD and major depressive disorder (A.R. 956).

Plaintiff presented for therapeutic treatment with Ms. Carter on June 27, July 2, July 19, and August 2, 2019 (A.R. 938-950). During these sessions, Plaintiff appeared to be in a dysphoric mood, was teary or on the verge of tears throughout, and reported passive thoughts of suicide related mostly to her pain (A.R. 938-950). Other than her mood and suicidal thoughts, her mental status findings remained entirely normal (A.R. 938-950). Plaintiff ceased her treatment with Ms. Carter thereafter because she moved out-of-state (A.R. 937).

On August 4, 2019, Plaintiff presented to Northside Mental Health Center, Crisis Stabilization Unit, where she was admitted for one day due to suicidal ideation (A.R. 919-934). She was intoxicated at the time with a blood alcohol concentration of "150" (A.R. 919, 922). She was diagnosed as experiencing a major depressive episode (A.R. 923). On the day of intake, Plaintiff's speech was spontaneous, her thought content disorganized, her attention adequate, and her short-term memory was impaired (A.R. 929). Plaintiff's depression and anxiety were rated as mild (A.R. 929). By the time of discharge, Plaintiff showed improvement in her mood and denied suicidal thoughts (A.R. 919).

Approximately one month later, on September 5, 2019, Plaintiff began seeing a primary care physician, Alliam Regan, M.D., of BMP Northern Edge Adult Medicine (A.R. 1129-1131). Plaintiff reported that she had been depressed and had been taking Zoloft but stopped because she did not like how it made her feel (A.R. 1129). Plaintiff asked to speak to someone about

therapy and was directed to follow-up in two weeks (A.R. 1130). Plaintiff returned on September 13, 2019, and she was very tearful in the office (A.R. 1114). Dr. Regan diagnosed Plaintiff with severe depression and gave her a prescription for duloxetine (A.R. 1115). Plaintiff saw Dr. Regan again on October 15, 2019, and she was again noted to be very tearful during the visit (A.R. 1110-1113). Plaintiff reported that she had tried the duloxetine for three days and stopped because it made her "too sleepy" (A.R. 1110). Plaintiff declined Dr. Regan's offer to try alternative medications (A.R. 1110). Plaintiff indicated that her depression was better than it had been before the move and reported that she was speaking to her therapist on the phone (A.R. 1110).

On October 28, 2019, Dr. Regan completed a Massachusetts Emergency Aid to the Elderly, Disabled and Children ("EAEDC") medical report (A.R. 961-970). Dr. Regan noted that Plaintiff complained of back pain and severe depression (A.R. 967). Her symptoms of depression included anhedonia, poor sleep, depressed mood, lack of energy, trouble concentrating, negative self-image, and suicidal ideation (A.R. 967). Plaintiff's appearance/attitude/behavior were appropriate, she was oriented as to person, place, and time, her speech was fluent and unimpaired, her thought process goal-directed, her perception intact, and her cognition average (A.R. 967). Dr. Regan did note that she had a depressed mood and hopeless thought content (A.R. 967). Her treatment plan was indicated to be to continue therapy (A.R. 967). Dr. Regan checked a box indicating that Plaintiff had a "physical, mental health, or cognitive impairment(s) affecting his or her ability to work AND the impairment(s) is expected to last more than a year" (A.R. 970).

On November 13, 2019, Plaintiff was seen by Namra Arif, P.Y., at Baystate Behavioral Health for depression and anxiety (A.R. 1191-92). Ms. Arif diagnosed Plaintiff with adjustment

9

disorder with mixed anxiety and depressed mood (A.R. 1191). Plaintiff returned to Baystate Behavioral Health on December 2, 2019, for a psychiatric evaluation before bariatric surgery to be completed by Brenda Temblador, Ph.D. (A.R. 1177-1180). On mental status examination, Plaintiff exhibited a depressed mood and constricted affect, but a normal appearance, attitude, speech, perception, orientation, memory, judgment, insight, thought process, and thought content (A.R. 1178-1179).

Plaintiff saw Ms. Arif once again on December 4, 2019, and a treatment plan to implement behavioral medicine interventions for pain management was formulated (A.R. 1175-1176). Plaintiff returned for a psychotherapy session with Ms. Arif on January 8, 2020 (A.R. 1172-1174). On examination, Plaintiff's appearance, eye contact, speech, and language were all normal (A.R. 1172-1173). Her judgment, insight, orientation, memory, attention, concentration, and fund of knowledge were all intact (A.R. 1173-1174). She was noted to have a depressed mood, guarded behavior, and helpless and hopeless thought content (A.R. 1173).

Plaintiff also saw Michele Chawla, LICSW, of West Central Family and Counseling on December 4, 2019, for a diagnostic evaluation (A.R. 1041-1043). Plaintiff's chief complaint was that she was feeling more depressed with increased chronic back pain, and she reported associated symptoms of decreased energy, decreased concentration, irritability, hopelessness, loss of interest, fatigue, anxiety, and self-isolation (A.R. 1041). On mental status examination, Plaintiff's speech was normal, her thought process logical, her judgment/insight were intact, and her attention/concentration were intact (A.R. 1042). She was oriented to person, place, and time and denied abnormal thoughts or perceptions (A.R. 1042). Plaintiff did display anxious, depressed, and tearful mood or affect (A.R. 1042). Ms. Chawla diagnosed Plaintiff with PTSD and major depressive disorder, recurrent (A.R. 1043).

Plaintiff returned for psychotherapy with Ms. Chawla on December 9, December 16, December 23, and December 30, 2019, and January 7, January 16, February 25, and March 4, 2020 (A.R. 1025-1039). Plaintiff spoke to Ms. Chawla about her physical pain symptoms, challenges in dealing with her elderly parents, the appeal of her denial of social security benefits, and her desire to move back to Florida (A.R. 1025, 1028, 1030, 1032, 1034, 1036, 1038, 1040). Plaintiff reported to each of these appointments clean, well-groomed, and appropriately dressed and was oriented to person, place, and time (A.R. 1025, 1027, 1029, 1031, 1033, 1035, 1037, 1039). She displayed normal thought process, intact judgment/insight and attention/concentration, and no abnormal thoughts/perceptions (A.R. 1025, 1027, 1029, 1031, 1033, 1035, 1037, 1039). At times her speech was soft and, each time, Ms. Chawla described her mood/affect as depressed, flat, and/or tearful (A.R. 1025, 1027, 1029, 1031, 1033, 1035, 1037, 1039).

    C.    Opinion Evidence

        1.    *Consultant Elsa Oben-Cuadros, Psy. D.*[5]

On March 21, 2019, consultant Elsa Oben-Cuadros, Psy.D., conducted a psychological consultive examination of Plaintiff (A.R. at 842-846). Plaintiff reported symptoms of depression with feelings of hopelessness and worthlessness related to her inability to work (A.R. 843). She denied present suicidal thoughts but did report on two earlier occasions having thoughts of driving her car into a river (A.R. 844). On mental status examination, Plaintiff had a normal appearance (casual dress with adequate hygiene and grooming), a normal attitude (friendly and cooperative), was oriented to person, place, and time, maintained adequate eye contact, appeared euthymic and with congruent effect, displayed linear and goal directed thought processes,

---

[5] The ALJ mistakenly refers to the examiner as Nekeshia Hammond, Psy.D.

11

exhibited fluent speech with normal rate, tone, and volume, and had grossly intact insight and judgment (A.R. 844-845). In examining cognitive functioning, Dr. Oben-Cuadros rated Plaintiff as average in all of the following areas: short term memory, immediate memory, fund of general information, abstract reasoning, and judgment (A.R. 845-846). Dr. Oben-Cuadros opined that "it is reasonable to conclude that [Plaintiff] would be a candidate for medication management and psychotherapy in order to better control her presenting mental health issues," diagnosed her with Adjustment Disorder, with depressed mood, and judged her prognosis to be fair (A.R. 846).

2. *State Agency Assessments*

On April 26, 2019, Damarys Sanchez, Psy.D., completed a disability assessment of Plaintiff's mental health impairments for purposes of her DIB and SSI claims (A.R. at 346-348). Based on review of the records, Dr. Sanchez found only mild impairment of her ability to understand, remember and apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself and concluded that Plaintiff's mental impairments were not severe (A.R. 347-348-348). On July 27, 2019, on reconsideration, James A. Brown, Ph.D., agreed with Dr. Sanchez's assessment (A.R. 381).

3. *Mental Impairment Questionnaire*

On March 6, 2020, Ms. Chawla completed a Mental Impairment Questionnaire in support of Plaintiff's disability application (A.R. 1046-1049). She noted that she had been seeing Plaintiff for weekly sessions lasting approximately one hour and that Plaintiff had "significant depression due to physical limitations + pain" (A.R. 1046). Ms. Chawla opined that Plaintiff had moderate functional limitations in activities of daily living and maintaining concentration, persistence, or pace, while she had a marked functional limitation in maintaining social functioning (A.R. 1048). She also stated that in the previous twelve months, Plaintiff had three

or more episodes of decompensation lasting at least two weeks (A.R. 1049). According to Ms. Chawla, Plaintiff's impairment could be expected to last at least twelve months and she would miss more than four days of work per month (A.R. 1049).

    D.    <u>Testimony at the July 28, 2020, Hearing</u>

At the July 28, 2020, hearing, Plaintiff told the ALJ that she was seeing her therapist virtually on a weekly basis to treat her depression and anxiety (A.R. 304). She testified that she has "days where it's a good therapy," and "days where I start an hour just in tears" (A.R. 304). Plaintiff indicated that she was waiting to get an appointment for possible psychiatric medications (A.R. 304-305). Regarding her anxiety, Plaintiff testified that she shuts herself out, stays away from people, and does not even want to go outside (A.R. 305). When questioned by her attorney about whether she has problems concentrating, she replied that she has "no mind for anything. The only thing that I'm mentally into putting puzzle pieces together and there's times where I can't even do that, but that's the only thing that I … try to do" (A.R. 305).

    E.    <u>The ALJ's Decision</u>

The ALJ conducted the requisite five-step sequential analysis. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of November 14, 2018 (A.R. at 204). At the second step, she found that Plaintiff's severe impairments included obesity, obstructive sleep apnea, lumbar spinal arthritis (status post-surgery September 22, 2015), scoliosis, non-insulin dependent diabetes mellitus, asthma, and bilateral glaucoma (status post laser treatment) (A.R. at 205). The ALJ also found that Plaintiff had multiple non-severe impairments, including mixed anxiety and depression, anxiety disorder, depressive disorder, hypertension, hyperlipidemia, remote history of bilateral carpal tunnel (status post releases right 2003, left 2009), and history of left shoulder bursitis (status post

subacromial decompression May 2010) (A.R. 205). The ALJ determined that "[t]he claimant's medically determinable mental impairments of adjustment disorder with mixed anxiety and depression, anxiety disorder, and depressive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere" (A.R. 206). As to the so-called Paragraph B criteria, the ALJ found that Plaintiff had a mild limitation in her ability to understand, remember, or apply information; a mild limitation in interacting with others; a mild limitation in her ability to concentrate, persist, or maintain pace; and a mild limitation in adapting or managing herself (A.R. at 209-210). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (A.R. at 211). Before proceeding to steps four and five, the ALJ found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that the claimant can perform frequent stooping, balancing, crouching, crawling, and kneeling. The claimant can perform occasional climbing of ramps and stairs, but cannot climb ladders, ropes or scaffolds with any measurable regularity. Due to history of asthma (to prevent exacerbation), the claimant cannot tolerate concentrated exposure to dust, gases, fumes, and poor ventilation on a more than occasional basis. The claimant can perform work activity that requires frequent, not constant, use of bilateral visual fields (meaning she does not have monocular vision and has no depth perception issues). Due to limitation in visual field, the claimant cannot tolerate exposure to hazards, such as dangerous moving machinery or unprotected heights. The claimant can perform activities that frequently require distance/far vision. The claimant may alter sitting and standing once per hour for 5 minutes while continuing work. The claimant will occasionally use a cane to ambulate longer distances outside the home over one block.

(A.R. 212). At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a data entry office clerk and patient representative/medical receptionist (A.R. 220). The

14

ALJ also made an alternative step five finding that Plaintiff could perform jobs found in significant numbers in the national economy taking into account Plaintiff's age, education, work experience, and RFC, and, therefore, Plaintiff was not disabled (*id*. at 220).

IV.     ANALYSIS

Plaintiff's argument on appeal is that the ALJ erred by not concluding that Plaintiff's mental impairments were severe at step two of the sequential evaluation process.  Specifically, Plaintiff argues that "a review of the factual evidence in the file supports a finding of severe impairment," (Dkt. No. 18 at 10), and that "[i]f [Plaintiff's] mental impairments had been found to be severe and found to have had a significant impact on her ability to perform basic work activity, the [ALJ] would likely have reduced her Residual Functional Capacity further" (Dkt. No. 18 at 17).  Moreover, Plaintiff faults the ALJ for relying on an absence of mental health treatment records after March 2020.

The chief problem with Plaintiff's argument is that it misapprehends the standard of review.  The court's job is not to examine the record to determine if it could support an alternate finding.  Rather the court reviews the record for substantial evidence and "'must uphold the [Commissioner's] findings … if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.'" *Purdy*, 887 F.3d at 13 (quoting *Rodriguez*, 647 F.2d at 222) (alterations in original).  "This is true 'even if the record arguably could justify a different conclusion.'" *Andrews v. Kijakazi*, No. Civil Action No. 18-40069-TSH, 2022 WL 867803, at *1 (D. Mass. Mar. 23, 2022) (quoting *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)).  Thus, if the ALJ's findings are supported by substantial evidence – and Plaintiff does not argue that they are not – they must be upheld even if the record could also support an alternate conclusion.

Review of the record reveals that the ALJ's step-two finding that Plaintiff's mental impairments were not severe is indeed supported by substantial evidence. In finding that Plaintiff's mental impairments were not severe, the ALJ followed the process for evaluating mental impairments as set forth in the regulations and found that Plaintiff only had "mild" limitation in each of the four broad functional areas. These findings are supported by the state agency assessments, which also ranked Plaintiff's limitation in each of these broad functional areas as mild. The ALJ explicitly relied on other evidence in the record as well. Regarding the first functional area of understanding, remembering, and applying information, the ALJ noted that Dr. Oben-Cuadros's testing showed Plaintiff was average in terms of memory, fund of knowledge, and the ability to solve problems. Plaintiff's treating providers also routinely described Plaintiff as logical and oriented, with intact judgment, insight, and memory. In terms of the second functional area – Plaintiff's ability to interact with others – the longitudinal record described Plaintiff as being able to interact with treating sources without issue. She was described as cooperative and pleasant and was logical and organized when being interviewed by medical providers. She had no issues with maintaining eye contact or with speech. Plaintiff was also friendly and cooperative with Dr. Oben-Cuadros, and Plaintiff had friends, despite being disconnected from them due to her physical problems. Moving on to the third area of concentrating, persisting, or maintaining pace, Plaintiff was routinely found to be alert and oriented, as well as goal directed and linear in her thought processes. Plaintiff made no errors on cognitive testing with Dr. Oben-Cuadros, and she displayed an average fund of knowledge, judgment, and ability to solve problems. Finally, with respect to the fourth functional area of adapting or managing oneself, Plaintiff was able to attend medical visits and treat as prescribed. She was able to complete personal care and chores except as limited by her pain, not her mental

health impairments.  Finally, Dr. Oben-Cuadros observed that Plaintiff was able to problem-solve by using common sense.  This quantum of evidence is sufficient to surpass the substantial evidence threshold.

The one error the ALJ did make was relying on Plaintiff's lack of mental health treatment after March 2020.  As correctly pointed out by Plaintiff, she testified at the July 28, 2020, hearing that she was participating in weekly therapy sessions, and her counsel advised the ALJ that the provider had not responded to Plaintiff's request for therapy records after March 2020 (A.R. 284, 304).  While Plaintiff's counsel cannot be faulted for the absence of the records from the record – the hearing took place during the height of the COVID-19 pandemic when, as Plaintiff's counsel told the ALJ, it is apparent that "no one [was] in the office" from whom to get the records – Plaintiff's counsel represented to the ALJ that "nothing's changed" with respect to Plaintiff's mental condition, that the requested records "were just updated records," and that they "won't make a difference in the outcome of the case" (A.R. 284).  Indeed, the Appeals Council reviewed the records and found that they did not show a reasonable probability of changing the outcome of the decision (A.R. 2).

Moreover, the ALJ relied on the supposed absence of mental health treatment records after March 2020 only in connection with finding Ms. Chawla's opinion that Plaintiff was more severely functionally limited not to be persuasive, while finding the state agency assessments of only mild limitations persuasive (A.R. 209).  Withal, this was not the only reason the ALJ gave for her assessment of the opinion evidence.  The ALJ found that the state agency assessments were persuasive in that they were consistent with the opinions of consultant Dr. Oben-Cuadros and supported by normal mental status findings throughout the treatment notes.  On the other hand, the ALJ found the opinion of Ms. Chawla not persuasive because it conflicted with the

mental status examination and findings of Dr. Oben-Cuadros, which were based on an objective examination of Plaintiff.  Ms. Chawla, by contrast, failed to provide supporting objective evidence for her opinions.  Thus, even without the supposed absence of treatment after March 2020, the ALJ's resolution of the conflict between the opinions of the state agency doctors and Ms. Chawla regarding Plaintiff's degree of functional limitation is supported by substantial evidence.  Under these circumstances, the court finds the ALJ's error to be harmless.

V.     CONCLUSION

Based on the foregoing, Plaintiff's motion for judgment on the pleadings (Dkt. No. 17 ) is DENIED and the Commissioner's motion to affirm (Dkt. No. 19) is GRANTED.  The clerk is directed to close the case.

It is so ordered.

Date:  September 29, 2022                               /s/ Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        U.S. MAGISTRATE JUDGE